**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

FREDDIE R.,

                              Plaintiff,                              No. 3:18-CV-907
                                                                         (CFH)

            v.

ANDREW SAUL,[1]

                              Defendant.

_____

**APPEARANCES:**                         **OF COUNSEL:**

Lachman, Gorton Law Firm        PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorney for plaintiff

Social Security Administration     CATHARINE L. ZURBRUGG, ESQ.
Office of Regional General Counsel  Special Assistant U.S. Attorney
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorney for the Commissioner

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

Plaintiff Freddie R. brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying his application for disability insurance benefits and supplemental security

_____

[1] Andrew Saul was appointed Commissioner of Social Security, and has been substituted as the defendant in this action.

income ("SSI") benefits.  Dkt. No. 1 ("Compl.").[2]  Plaintiff moves for a finding of disability or remand for a further hearing, and the Commissioner cross moves for a judgment on the pleadings.  Dkt. Nos. 11, 14.  Plaintiff filed a reply.  Dkt. No. 15.  For the following reasons, the determination of the Commissioner is affirmed.

## I. Background

Plaintiff was born in 1973, and completed eleventh grade.  T. 33, 35.[3]  He has a driver's license, but does not drive.  Id. at 35.  Plaintiff lives with his wife and two children in a duplex apartment.  Id. at 34.  Plaintiff previously worked stocking and loading trucks and warehouses.  Id. at 37-38.

On June 17, 2014, plaintiff protective filed a Title II application for disability insurance benefits.  T. 211.  On that same day, plaintiff also protectively filed a Title XVI application for SSI benefits.  Id. at 218.  In both applications, plaintiff alleged a disability onset date of December 29, 2011.  Id. at 211, 218.  The applications were initially denied on August 13, 2014.  Id. at 84-89.  Plaintiff requested a hearing, and a hearing was held on April 27, 2017 before Administrative Law Judge ("ALJ") Gretchen Mary Greisler.  Id. at 29-62, 92.  ALJ Greisler issued an unfavorable decision on May 24, 2017.  Id. at 15-24.  On June 13, 2018, the Appeals Council denied plaintiff's request

---

[2]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 7.

[3]  "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Dkt. No. 8.  Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

for review, making the ALJ's decision the final determination of the Commissioner.  Id. at 1-6.  Plaintiff commenced this action on August 2, 2018.  See Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148

3

(N.D.N.Y. 1999) (citing <u>Johnson</u>, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  <u>Id.</u> § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience.  <u>Id.</u> § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  <u>Id.</u> § 423(d)(3).  Additionally, the severity of the impairments is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain or disability, and educational background, age, and work experience."  <u>Ventura v. Barnhart</u>, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing <u>Mongeur v. Heckler</u>, 722 F.2d

1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. §

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to

establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-

80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth

step, the burden shifts to the Commissioner to prove that the plaintiff is still able to

engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

## C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged substantial gainful activity since December 29, 2011, the alleged onset date.  T. 17.  The ALJ found at step two that plaintiff had the severe impairment of degenerative disc disease of the cervical and lumbar spine.  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 18.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he is able to sit for one hour before needing to change positions for a brief period to allow him to stretch. He is able to stand and/or walk for 20 minutes.  He is able to occasionally bend and climb stairs and ramps.  He cannot tolerate concentrated exposure to respiratory irritants.

Id.  At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  Id. at 23.  At step five, the ALJ determined that, after consulting a vocational expert, there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  Id.  Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from December 29, 2011, through the date of this decision."  Id. at 24.

## D. Arguments

Plaintiff first argues that the ALJ's RFC determination is not supported by

6

substantial evidence.  Dkt. No. 11 at 10-16.  Specifically, he contends that (1) plaintiff cannot meet employer standards for staying on task and attendance; and (2) plaintiff's need to change positions precludes his ability to perform sedentary work.  See id. Plaintiff next argues that the ALJ failed to consider a closed period of benefits.  Id. at 16-17.  Plaintiff then argues that the ALJ improperly weighed the opinion evidence.  Id. at 17-18.  Finally, plaintiff argues that the step five determination is not supported by substantial evidence.  Id. at 18-19.  Conversely, the Commissioner first argues that the ALJ's RFC determination is supported by substantial evidence.  Dkt. No. 14 at 6-17. The Commissioner next argues that the ALJ did not fail to consider a closed period of benefits.  Id. at 17.  The Commissioner then argues that the ALJ properly weighed the medical evidence.  Id. at 18-21.  Finally, the Commissioner argues that substantial evidence supports the step five determination.  Id. at 21.

### E. Relevant Medical Evidence

### 1. Gilbert Jenouri, M.D.

Plaintiff met with Dr. Jenouri for a orthopedic consultative examination on June 10, 2016.  Plaintiff reported difficulties with his lower back, status post back surgery in October 2015.  T. 467.  He reported continued sharp low back pain with an intensity of 8 or 9 out of 10.  Id.  Plaintiff stated that the pain radiated to the bilateral hips and right lower extremity with numbness and tingling.  Id.  Plaintiff reported that the pain occurred every day and precipitated with activity.  Id.  As to activities of daily living, plaintiff reported that he did not cook, clean, shop, do laundry, or provide childcare.  Id.  He

indicated that he showers and dresses every day, watches television, listens to the radio, and reads.  Id. at 467-68.

Dr. Jenouri indicated that plaintiff did not appear to be in acute distress.  T. 468. His gait was antalgic, and he was unable to walk on his heels or toes without difficulty. Id.  Plaintiff's squat was fifty percent, and his station was normal.  Id.  He did not need help changing for the examination or getting on and of the examination table, and he was able to rise from his chair without difficulty.  Id.  Plaintiff's hand and finger dexterity was intact, and his grip strength was 5/5 bilaterally.  Id.  Plaintiff had full flexion, extension, lateral flexion, and rotary movements bilaterally in his cervical spine.  Id.  He had full range of motion in his shoulders, elbows, hands, wrists, and fingers bilaterally. Id.  Plaintiff's straight leg raise was positive at 30 degrees on both legs.  Id.

Dr. Jenouri opined that plaintiff had moderate to severe restrictions walking, standing, and sitting long periods; bending, stair climbing, lifting, and carrying.  T. 469. He indicated that plaintiff should avoid smoke, dust, and other known respiratory irritants.  Id.  Dr. Jenouri described plaintiff's prognosis as stable.  Id.

On June 12, 2016, Dr. Jenouri completed a medical source statement, wherein he opined that plaintiff could occasionally lift or carry up to ten pounds, but never lift or carry more than ten pounds.  T. 470.  He further opined that plaintiff could sit for two hours at a time without interruption, and for six hours total in an eight-hour day; and stand and work for one hour at a time without interruption, and for one hour total in an eight-hour day.  Id. at 471.  Dr. Jenouri opined that plaintiff could never reach with either hand, and occasionally handle, finger, feel, and push/pull with either hand.  Id. at

472.  Plaintiff could occasionally operate foot controls with both feet.  Id.  Dr. Jenouri indicated that plaintiff could occasionally climb stairs and ramps, but never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl.  Id. at 473.  Dr. Jenouri opined that plaintiff could occasionally operate a motor vehicle.  Id. at 474.  Dr. Jenouri further indicated that plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces.  Id. at 275.

### 2. Matthew Bennett, M.D.

On October 31, 2016, Dr. Bennett completed a questionnaire concerning plaintiff's limitations.  T. 717.  Dr. Bennett indicated that plaintiff's condition would cause him pain, fatigue, diminished concentration, and diminished work pace.  Id.  He indicated that plaintiff would need to rest at work.  Id.  Dr. Bennett opined that plaintiff would be off task more than 33 percent of the day.  Id.  Dr. Bennett indicated that plaintiff would have good days and bad days, and the bad days would lead to missed work more than four days per month.  Id. at 717-18.  Dr. Bennett stated that plaintiff could sit for approximately four hours out of an eight-hour day, but would need to change positions every hour.  Id. at 718.  Plaintiff could stand/walk for approximately six hours out of an eight hour day, but for only ten to twenty minutes at a time.  Id.  Dr. Bennett indicated that plaintiff could frequently lift up to five pounds, occasionally lift up to ten pounds, and never lift over ten pounds.  Id.

In March 2017, Dr. Bennett indicated that plaintiff's condition had stayed the same since the October 2016 questionnaire.  T. 716.

### 3. John Welch, Jr., D.O.

On September 16, 2016, Dr. Welch completed a questionnaire concerning plaintiff's limitations.  T. 678.  Dr. Welch indicate that plaintiff's condition would cause him pain, fatigue, diminished concentration, and diminished work pace.  Id.  He noted that plaintiff would need to rest at work.  Id.  Dr. Welch opined that plaintiff would be off task more than 33 percent of the day.  Id.  Dr. Welch indicated that plaintiff would have good days and bad days, and the bad days would cause him to miss more than four days of work per month.  Id. at 678-79.  Dr. Welch opined that plaintiff could sit for approximately four hours out of an eight-hour day.  Id. at 679.  He further opined that plaintiff could stand or walk for one to two hours out of an eight-hour day.  Id.  Dr. Welch indicated that plaintiff could frequently lift up to five pounds, occasionally lift up to ten pounds, and never lift over ten pounds.  Id.


### F. The ALJ's Analysis of Plaintiff's RFC

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient."  Martone, 70 F. Supp. 2d at 150.  The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work.  See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§

10

404.1545, 416.960.  If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform."  Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).  "An ALJ should consider 'all medical opinions received regarding the claimant.'"  Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6).

Here, the ALJ concluded that plaintiff retained the RFC to

11

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he is able to sit for one hour before needing to change positions for a brief period to allow him to stretch. He is able to stand and/or walk for 20 minutes. He is able to occasionally bend and climb stairs and ramps. He cannot tolerate concentrated exposure to respiratory irritants.

Id. at 18.

Plaintiff first argues that "[t]he undisputed medical opinions of record show that [p]laintiff cannot meet employer standards for staying on task and/or attendance." Dkt. No. 11 at 10. In making this argument plaintiff relies on the medical source statements of Dr. Bennett and Dr. Welch, plaintiff's treating physicians, who both opined that plaintiff would be off task more than 33 percent of the day and absent more than four days per month. See T. 678-79, 717-18. The ALJ afforded both of these opinions "little evidentiary weight because it [was] not supported by the clinical findings during examinations." Id. at 22. As to Dr. Bennett, the ALJ cites one instance in October 2016 wherein Dr. Bennett noted that plaintiff's gait was normal and that he was able to walk on his heels and toes. Id. Indeed, as the Commissioner argues, Dr. Bennett and Dr. Welch's opinions regarding plaintiff's ability to be on task and his work attendance are inconsistent with the medical evidence in the record, which indicated generally unremarkable findings including normal gait and station, good lumbar flexion, mild tenderness in left lower spine, no muscle astrophy, no strength or sensory deficits in the lower extremities, and full range of motion in plaintiff's shoulders. See id. at 332, 398, 400, 402, 407, 412, 415, 418, 421, 424, 428, 462-63, 484, 495, 502, 565, 569, 583. To the extent that plaintiff argues that the ALJ did not properly assess his pain, the Court notes that the ALJ discussed plaintiff's complaints of pain and found them inconsistent

with medical evidence in the record.  See id. at 20-21.  For example. the ALJ noted that plaintiff indicated to his provider in 2016 that his back pain improved with exercise and use, and compared that statement to other abnormal findings in the record.  See id. at 20 (citing id. at 534).  Further, the ALJ stated that plaintiff first complained of neck pain in April 2015.  Id. at 20 (citing id. at 502).  That pain continued in May 2015, but in June 2015, plaintiff indicated that he did not want any further treatment for his neck because his pain improved with physical therapy.  Id. at 20 (citing id. at 504).  As such, the ALJ properly considered plaintiff's pain in conjunction with his ability to be on task and attend work.  See Reices-Colon v. Astrue, 523 F. App'x 796, 799 (2d Cir. 2013) (summary order) (relying on "four pieces of evidence in the record" supporting the conclusion that plaintiff's pain had improved with treatment).   "While, the Court is aware that the record contains some evidence that supports plaintiff's subjective complaints of pain, 'disability requires more than mere inability to work without pain.'" Fernandez v. Astrue, No. 11-CV-1644 DLI, 2013 WL 1232210, at *16 (E.D.N.Y. Mar. 26, 2013) (citations omitted).

The Court agrees with the Commissioner that although plaintiff cites to various instances in the record that he believes supports attendance and concentration limitations, "none of those records actually indicate that he had limitations in those areas."  Dkt. No. 14 at 12-13.  As such, the Court finds that the ALJ did not err in failing to assess concentration and attendance limitations.

The Court reaches a similar conclusion with regard to plaintiff's need to change positions.  Plaintiff argues that the "primary issue in this case . . . boils down to how

13

long [p]laintiff must stand before being able to return to a seated position." Dkt. No. 11 at 13. As stated, the ALJ found that plaintiff could "sit for one hour before needing to change positions for a brief period to allow him to stretch." T. 18. Plaintiff is correct that the medical providers opined that plaintiff had restrictions sitting for long periods of time. See id. at 469, 471, 679, 718; Dkt. No. 11 at 15. However, the ALJ limited plaintiff to sitting for one hour at a time, which is consistent with both Dr. Bennett and Dr. Welch's opinions that plaintiff could sit for four hours and change positions every hour or two hours, respectively. Id. at 679, 718. Moreover, as the Commissioner argues, the normal examination findings discussed above support the ALJ's finding that plaintiff only needed a brief period of stretching before he returned to a seated position. See supra; Dkt. No. 14 at 13. It is well-settled that "[a]n ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion, and accurately reflect the limitations and capabilities of the claimant involved." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (citations and internal quotation marks omitted). Because the record not only demonstrates generally normal examination findings, but also shows plaintiff's continued improvement with regard to limitations and pain, the Court finds that the ALJ properly relied on the vocational expert's testimony in assessing plaintiff's ability to change positions, and formulated an RFC that is supported by substantial evidence.

Again, the Court reminds that where the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may

support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado</u>, 805 F. Supp. at 153. Accordingly, the Court concludes that remand is inappropriate on this basis.

## G. Consideration of a Closed Period of Benefits

Plaintiff argues that because the ALJ noted some improvement in plaintiff's back pain after the implementation of a spinal cord stimulator, the ALJ should have considered a closed period of benefits from plaintiff's onset date through the date of the insertion of the stimulator. Dkt. No. 11 at 16-17. The Commissioner argues that "the ALJ considered and discussed medical records from the entire relevant period, including treatment notes dating back to 2012 indicating that [p]laintiff's gait and station were normal, with a few abnormal findings aside from muscle spasms." Dkt. No. 14 at 17. The Court agrees with the Commissioner.

"A closed period of disability refers to when a claimant is found to be disabled for a finite period of time which started and stopped prior to the date of the administrative decision granting disability status." <u>Deronde v. Astrue</u>, No. 7:11-998, 2013 WL 869489 at *1 n.4 (N.D.N.Y. Feb.11, 2013) (internal quotation marks omitted). As the Commissioner argues, the ALJ considered ample evidence throughout the relevant period that supported her RFC finding, including plaintiff's treatment notes from plaintiff's alleged onset date through the date of the implementation of the spinal cord stimulater. <u>See</u> Dkt. No. 14 at 17 (citing T. 20, 418, 421, 424, 428, 462-63, 484, 495, 502, 565, 569, 583). Thus, "although [plaintiff's] condition may have improved, there is

no error in finding that the condition improved from was not disabling. Therefore, because there is substantial evidence indicating that [plaintiff] was not disabled during any period, the ALJ was correct not to consider a closed period of benefits." Williams v. Colvin, No. 15-CV-144S, 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016). As such, remand is not required on this basis.

### H. The ALJ's Analysis of the Opinion Evidence

When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir.1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D.Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of

16

the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. See id. at 133-34; 20 C.F.R. § 404.1527(e) (2005).

The ALJ granted Dr. Daniel Fedorowicz's[4] opinion that although plaintiff was "certainly not capable of going back to a heavy lifting job, . . . he is certainly capable of sedentary light work in a sit down mode," T. 456, "great weight in determining [plaintiff's RFC] because it is a medical opinion from a treating source and is supported by the diagnostic studies and clinical findings," id. at 21. Although the Court agrees that the terminology used by Dr. Fedorowicz seems to conflate sedentary and light work, the Court agrees with the Commissioner that "Dr. Fedorowicz's opinion [ ] indicates that [p]laintiff can perform seated work." Dkt. No. 14 at 23. Such statement is consistent with Dr. Fedorowicz's examination on that date, which showed no significant radiculopathy and that plaintiff was able to touch his ankles with his legs straight without difficulty. T. 456. The notion that plaintiff could perform seated work is also consistent with the other medical evidence in the record, as discussed above. See supra. It was the ALJ's discretion to weigh the evidence concerning plaintiff's stress limitations and

---

[4] Dr. Fedorowicz was one of plaintiff's treating physicians.

make a RFC determination that was consistent with the evidence as a whole. See Bliss v. Colvin, No. 3:13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); White v. Colvin, No. 6:13-CV-0084, 2014 WL 1311993, at *7 (N.D.N.Y. Mar. 31, 2014) ("[I]t is the ALJ's job to properly evaluate the evidence and reconcile any apparent inconsistencies."); Petell v. Comm'r of Soc. Sec., No. 7:12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (noting that the ALJ is "free to resolve issues of credibility as to lay testimony or choose between properly submitted medical opinions"). As such, the Court concludes that the ALJ properly weighed Dr. Fedorowicz.

Plaintiff also argues that the ALJ improperly weighed the opinion of the consultative examiner, Dr. Jenouri. See Dkt. No. 11 at 17-18. The Court disagrees. The ALJ granted Dr. Jenouri's opinion "some weight in determining [plaintiff's RFC], but only to the extent that it is supported by the evidence as a whole." T. 22. The ALJ correctly noted that the "clinical findings documented in [plaintiff's] treatment notes shortly before and shortly after the consultative examination, indicate that [plaintiff's] gait and station were normal." Id. Moreover, the ALJ acknowledged that plaintiff had limitations in standing, walking, bending, lifting, carrying, but indicated that the record did "not suggest that he [was] unable to perform these activities." Id. Insofar as plaintiff argues that plaintiff maintained these limitations, the Court disagrees. As the

Commissioner argues, plaintiff did not seek treatment for his shoulder after 2012. Dkt. No. 14 at 20. Although plaintiff complained of neck pain and reduced strength in his left arm in April 2015, he returned to full strength the next month and had full range of motion bilaterally in his shoulders. Id. (citing T. 20, 502-03). As the ALJ noted, and the Court assessed above, plaintiff indicated that his neck and arm pain improved with physical therapy, and in June 2015 stated that he did not want any further treatment. Id.; T. 504. "The Court is cognizant that the opinions of consultative examiners are not entitled to the same deference as opinions by treating physicians, and that in fashioning an RFC, the ALJ is not required to adopt any one opinion." Pugh v. Comm'r of Soc. Sec., 351 F. Supp. 3d 305, 315 (W.D.N.Y. 2018) (internal citations omitted). As such, the Court finds that the ALJ properly found Dr. Jenouri's inconsistent with the weight of the evidence.

The Court notes that the substantial evidence standard is "a very deferential standard of review," and that "once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault, 683 F.3d at 448 (internal quotations marks omitted). Based on the evidence in the record, the Court concludes that substantial evidence supports the ALJ's weighing of opinion evidence.

Moreover, the ALJ has the responsibility of reviewing all the evidence before her, resolving inconsistencies, and making a determination consistent with the evidence as a whole. See Bliss, 2015 WL 457643, at *7. "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'" Camarata v. Colvin,

No. 14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting <u>Galiotti v. Astrue</u>, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)).  It is clear from the ALJ's overall decision that she appropriately considered the evidence before her, including the opinions of record and plaintiff's medical records.  The Court's review of the ALJ's overall decision indicates that she properly reviewed the evidence of record and provided sufficient explanation for her analysis.  For the reasons above, the Court therefore finds that the ALJ's RFC determination (including her analysis of the opinion evidence) and overall finding that plaintiff is not disabled are supported by substantial evidence.

### I. Step Five Determination

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at step five "'to show there is other work that [the claimant] can perform.'"  <u>McIntyre</u>, 758 F.3d at 150 (quoting <u>Brault v. Soc. Sec. Admin.</u>, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved."  <u>McIntyre</u>, 758 F.3d at 151 (quoting <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing <u>Aubeuf v. Schweiker</u>, 649 F.2d 107, 114 (2d Cir. 1981)).  "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is

otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." <u>Pardee</u>, 631 F. Supp. 2d at 211 (citing <u>Melligan v. Chater</u>, No. 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

The Court finds that the ALJ's finding that plaintiff was capable of performing a significant number of jobs in the national economy is supported by substantial evidence in the record. As stated above, the ALJ properly determined plaintiff's RFC, and substantial evidence in the record supports that finding. <u>See</u> T. 23-24. Because the ALJ posed a hypothetical based on that RFC, and the jobs that the vocational expert set forth all constitute sedentary work with the limitations set forth in the RFC, the Court finds that the step five determination is supported by substantial evidence. <u>See</u> <u>id.</u>

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that Freddie R.'s motion (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: September 27, 2019
    Albany, New York

Christian F. Hummel
U.S. Magistrate Judge